Board of Mgrs. of the Colony at Hartsdale Condominium v C.M.V. Co., Inc. (2024 NY Slip Op 50998(U))

[*1]

Board of Mgrs. of the Colony at Hartsdale Condominium v C.M.V. Co., Inc.

2024 NY Slip Op 50998(U)

Decided on August 1, 2024

Supreme Court, Westchester County

Ondrovic, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 1, 2024
Supreme Court, Westchester County

Board of Managers of the Colony at Hartsdale Condominium, Plaintiff,

against
C.M.V. Company, Inc. and Christopher M. Verrone a/k/a Chris Verrone, Defendants.

Index No. 63948/2023

Eric P. Blaha, Esq.
Smith Buss & Jacobs LLP
Attorney for the plaintiff
Christopher Riley, Esq.
Attorney for the defendants

Robert S. Ondrovic, J.

In an action, inter alia, to recover damages for breach of a construction contract and unjust enrichment, the defendants move for summary judgment dismissing the complaint insofar as asserted against the defendant Christopher M. Verrone a/k/a Chris Verrone (hereinafter Verrone) and pursuant to 22 NYCRR 130-1.1 for an award of costs and attorneys' fees, and the plaintiff cross-moves for leave to amend the complaint and an order directing Verrone to appear for and complete a deposition in the presence of the court-appointed discovery referee.
The following papers were considered on the defendants' motion and the plaintiff's cross motion:
PAPERS    NUMBERED
Notice of Motion, Affidavit of Defendant, 
Affirmation, Exhibits A - I 1 — 12
Notice of Cross Motion, Affirmation in Opposition
and in Support of Cross Motion, Memorandum of
Law in Opposition, Exhibits 1 — 11 13 — 26
Affirmation in Opposition to Cross Motion and in
Support of Motion, Affidavit in Opposition to Cross
Motion and in Support of Motion, Exhibits A — F 27 — 34
Reply Affirmation, Exhibit 1 35 — 36
Relevant Factual and Procedural Background
The plaintiff is the managing body of a condominium located in Hartsdale, NY known as "The Colony at Hartsdale Condominium" (hereinafter the Condo). Verrone is the president of the defendant C.M.V. Company, Inc. (hereinafter CMV, together with Verrone, the defendants). In May 2022, the plaintiff entered into an AIA contract with CMV to replace the Condo's roof for the approximate amount of $3.7 million.
By letter dated June 22, 2023, the plaintiff's attorney notified the defendants that the plaintiff was terminating the contract with CMV and demanded the return of $686,541.85. In response, the defendants' attorney sent an email to the plaintiff's attorney indicating that CMV was owed the total amount of $989,546 for, among other things, pool decking work, roof repairs, drain work, permit work, and roof design. In a reply email, the plaintiff's attorney demanded that the defendants provide any and all documents and information upon which CMV claims it is owed money from the plaintiff on or before July 19, 2023.
The instant action
On July 20, 2023, the plaintiff commenced the instant action against the defendants by summons with notice. Soon thereafter, the parties entered into a stipulation, pursuant to which they agreed that the amount of $686,541.85, which had been deposited by the defendants in their attorney's IOLTA account, would be held by the defendants' attorney for the duration of the action.
In a verified complaint, the plaintiff alleged that CMV was awarded the contract because it was the lowest bidder and offered a 30-year warranty. The plaintiff alleged, in relevant part, that in December 2022, CMV submitted a payment requisition in the amount of $686,541.85 to purchase roofing materials and the Condo tendered a check to CMV in that amount in January 2023. The plaintiff alleged that it terminated the contract with CMV in June 2023, after it discovered that CMV's warranty "was worthless" and "from an entity controlled by Defendants that had been in existence for only two years, Impervious Systems Group, Inc. ("ISG")."[FN1]
According to the plaintiff, CMV never purchased the roofing materials and is refusing to return the money paid to it for that purpose. The complaint asserts causes of action sounding in breach of contract, overpayment on contract, unjust enrichment, conversion, and money had and received.
Issue was joined by service of the defendants' answer, wherein they denied the material allegations of the complaint and asserted two affirmative defenses alleging failure to mitigate and that the plaintiff's own conduct delayed the project and increased the costs and expenses. The defendants also interposed four counterclaims seeking damages in the total amount of $2.2 million based on the plaintiff's alleged failure to pay for certain work performed by the defendants under the subject contract and pursuant to an oral contract.
On April 24, 2024, the court appointed Vincent J. Aceste, Esq., as discovery referee (hereinafter the referee).
The defendants' motion and the plaintiff's cross motion
By notice of motion, the defendants moved for summary judgment dismissing the complaint insofar as asserted against Verrone and pursuant to 22 NYCRR 130-1.1 for an award of costs and attorneys' fees. In a supporting affidavit, Verrone averred that CMV submitted a payment requisition reflecting that $870,856.05 of work had been completed and the plaintiff [*2]had paid the amount of $119,000, leaving an outstanding balance of $742,207.40. He noted that after the architect certified that "the Work has progressed as indicated" and "[CMV] is entitled to payment of the AMOUNT CERTIFIED,"[FN2]
the plaintiff tendered a check to CMV in the amount of $686,541.84. Verrone insisted that "no part of these monies were designated for purchase of materials" and "the requisition shows that the retainage was only for work, and not for material."[FN3]

In an affirmation, the defendants' attorney argued that the complaint is only verified by the plaintiff's attorney and does not assert any allegation against Verrone in his individual capacity, and, therefore, failed to state a claim to pierce the corporate veil. The defendants' attorney further argued that the plaintiff named Verrone as a defendant in his individual capacity without any basis in law or fact and with the intent to harass. He asserted that the defendants are entitled to an award in the amount of $5,200 based on the plaintiff's frivolous claim against Verrone.
By notice of cross motion, the plaintiff cross-moved pursuant to CPLR §§ 3025(b) and 3124 for leave to amend the complaint and an order directing Verrone to appear for and complete a deposition in the presence of the referee. In an affirmation in support of the cross motion and in opposition to the defendants' motion, the plaintiff's attorney argued that Verrone was hostile and evasive during his deposition and his attorney repeatedly interrupted and instructed Verrone not to answer questions relevant to veil piercing and alter ego theories of liability. He complained that the conduct of the defendants' attorney was so disruptive and unruly that the deposition ended early on both dates and the Court was required to appoint a referee. The plaintiff's attorney further argued that the evidence adduced to date suggests that none of the companies controlled by Verrone follow any corporate formalities, but "part of the same network," and that Verrone formed ISG "as part of a scheme to induce Plaintiff to select him for the project."[FN4]

Attached to the plaintiff's cross motion is a proposed amended complaint, which seeks to include, inter alia, additional allegations that Verrone exercised complete domination of CMV in connection with the subject transaction between the plaintiff and CMV, and that such domination was used to "fraudulently induce Plaintiff to enter into the AIA contract under the false promise of a credible 30-year warranty."[FN5]
The proposed amended complaint alleged that Verrone formed ISG one year prior to the subject transaction and "pretended that entity was a credible manufacturer, and formatted a fraudulent warranty document from ISG, which he presented to Plaintiff on behalf of CMV, concealing his part as the sole owner of ISG."[FN6]
It alleged that in an email dated March 15, 2022, which was attached as an exhibit to the motion, [*3]Verrone admitted to his attorney that "he was secretly acting as the manufacturer on the project" and "confess[ed] his fraudulent scheme."[FN7]

In a memorandum of law in opposition to the defendants' motion and in support of the plaintiff's cross motion, the plaintiff's attorney argued that the defendants' motion should be denied for failure to request a premotion conference and to submit a statement of undisputed material facts. The plaintiff's attorney also asserted that the defendants' motion was premature, arguing that "Defendants have intentionally obstructed Plaintiff's ability to adduce evidence to support its veil piercing and alter ego claims" and Verrone's deposition has not been completed.[FN8]
He contended that the defendants' motion should be denied for the additional reason that the defendants failed to establish, prima facie, that "Verrone adhered to all corporate formalities in the conduct of his numerous entities in relation to the transactions with Plaintiff."[FN9]
The plaintiff's attorney emphasized that the evidence adduced thus far suggests that Verrone uses entities under his control interchangeably and "as a mere instrumentality to achieve his fraudulent objectives."[FN10]
He also asserted that even though the complaint contains allegations sufficient to state a cause of action based on alter ego and veil piercing liability, leave to amend the complaint should be granted to allow the plaintiff to include additional allegations to support those claims.
In an affirmation in opposition to the plaintiff's cross motion and in further support of the defendants' motion, the defendants' attorney argued that the plaintiff waived any additional discovery by filing a note of issue on April 29, 2024. He asserted that the plaintiff failed to demonstrate why an additional deposition of Verrone is material and necessary and why the plaintiff is seeking to impose personal liability against Verrone given that the disputed funds are being held in an IOLTA account. The defendants' attorney further argued that the proposed amended complaint fails to allege that the plaintiff sustained any damages arising from the defendants' alleged fraud, emphasizing that the subject contract was terminated by the plaintiff "for the Owner's convenience."[FN11]
He also noted, among other things, that the cross motion was not supported by an affidavit of the plaintiff. In an affidavit, Verrone added, inter alia, that CMV could not issue a warranty because the roof was never installed.
In an affirmation in reply, the plaintiff's attorney reiterated that the defendants' motion failed to demonstrate that the allegations in the complaint are insufficient to support the imposition of personal liability against Verrone based on alter ego and piercing the corporate veil theories. He contended that it is irrelevant that certain funds are being held in escrow because the plaintiff's compensatory damages, which includes an award of attorney's fees, exceeds that amount. The plaintiff's attorney also asserted that the defendants failed to establish that they would be prejudiced if the complaint were amended to include additional allegations.
ANALYSIS
As a threshold matter, although the defendants' motion was denominated, in part, as one to dismiss the complaint pursuant to CPLR § 3211, it was made after joinder of issue and after the Court issued a trial readiness order, and therefore, was actually one for summary judgment pursuant to CPLR § 3212 (see CPLR § 3212[a]; Brewi-Bijoux v City of New York, 73 AD3d 1112, 1113 [2d Dept. 2010]).
"The general rule ... is that a corporation exists independently of its owners, who are not personally liable for its obligations, and that individuals may incorporate for the express purpose of limiting their liability. The concept of piercing the corporate veil is an exception to this general rule, permitting, in certain circumstances, the imposition of personal liability on owners for the obligations of their corporation" (Sterling Park Developers, LLC v China Perfect Constr. Corp., 185 AD3d 1082, 1083-84 [2d Dept 2020] [internal quotation marks and citations omitted]; see East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc., 66 AD3d 122, 126 [2d Dept 2009]). "'Piercing the corporate veil' is not a cause of action independent of the cause of action alleged against the corporation. Instead, 'it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligations on its owners" (Open Door Foods, LLC v Pasta Machines, Inc., 136 AD3d 1002, 1004 [2d Dept 2016]).
" 'A party seeking to pierce the corporate veil must establish that (1) the owners exercised complete domination of the corporation with respect to the transaction attacked, and (2) such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury' " (Arjumand v LaGuardia Express, LLC, 195 AD3d 988, 988-989 [2d Dept 2021], quoting Matter of Edrich v MMAL Corp., 134 AD3d 935, 936 [2d Dept 2015]). "Factors to be considered in determining whether the owner has abused the privilege of doing business in the corporate form include, inter alia, whether there was a failure to adhere to corporate formalities, inadequate capitalization, commingling of assets, and use of corporate funds for personal use" (New Hackensack Realty, LLC v Lawrence Dev. Realty, LLC, 226 AD3d 799, 804 [2d Dept 2024] [internal quotation marks omitted]; see Growth v Ferrante, 221 AD3d 664, 665 [2d Dept 2023]; East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc., 66 AD3d at 127). "Veil-piercing is a fact-laden claim that is not well suited for summary judgment resolution" (Town-Line Car Wash, Inc. v Don's Kleen Machine Kar Wash, Inc., 169 AD3d 1084, 1085 [2d Dept 2019]; see Arjumand v LaGuardia Express, LLC, 195 AD3d at 988 [internal quotation marks omitted]).
"A plaintiff moving for summary judgment on a cause of action asserted in a complaint generally has the burden of establishing, prima facie, 'all of the essential elements of the cause of action'" (Sterling Park Developers, LLC v China Perfect Constr. Corp., 185 AD3d 1082, 1084 [2d Dept 2020], quoting Nunez v. Chase Manhattan Bank, 155 AD3d 641, 643 [2d Dept 2017]). "By contrast, a defendant moving for summary judgment dismissing one of the plaintiff's causes of action may generally sustain his or her prima facie burden by negating a single essential element of that cause of action" (J & M Industries, Inc. v Red Apple 180 Myrtle Avenue Development, LLC, 197 AD3d 1154, 1156 [2d Dept 2021] [internal quotation marks omitted]). "It is a defendant's burden, when it is the party moving for summary judgment, to demonstrate affirmatively the merits of a defense, which cannot be sustained by pointing out gaps in the plaintiff's proof" (id.; see Quantum Corporate Funding, Ltd v Ellis, 126 AD3d 886, 871 [2d Dept 2015]). "Failure to make such a prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers" (Alvarez v. Prospect Hosp., 68 NY2d 320, 324 [*4][1986]; see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]).
Here, the defendants failed to affirmatively establish, prima facie, that Verrone did not exercise domination and control over CMV to commit a fraud or wrong against the plaintiff, such that the doctrine of piercing the corporate veil is inapplicable (see Sterling Park Developers, LLC v China Perfect Construction Corp., 185 AD3d 1082, 1084-1085 [2d Dept. 2020]; Open Door Foods, LLC v Pasta Machines, Inc., 136 AD3d 1002, 1005 [2d Dept 2016]; c.f. Moon v Owadeyah, 223 AD3d 793, 795 [2d Dept. 2024]). The defendants submitted no evidence in support of their motion to refute the plaintiff's claims that Verrone abused the privilege of doing business in the corporate form by failing to observe corporate formalities, that he concealed from the plaintiff that he was the sole owner of both CMV and ISG, and that he induced the plaintiff to enter into the contract with CMV by promising to provide a 30-year warranty made by ISG "that did not exist" and was "worthless."[FN12]

Rather, the defendants, applying the standard applicable to a motion to dismiss pursuant to CPLR 3211(a), argued that the allegations in the complaint are insufficient to impose personal liability against Verrone based on alter ego and veil piercing theories of liability. Contrary to the defendants' contention, the complaint alleged, in relevant part, that "[i]n addition to ISG, Verrone is the principal of nearly a dozen other entities including CMV," that pursuant to the AIA contract, "CMV was required to deliver an acceptable manufacturer's warranty for a period of 30 years," that "[t]he warranty was not from a credible company, but instead from an entity controlled by Defendants that had been in existence for only two years, [ISG]," and that "Verrone exercised complete domination and control over ISG and CMV and used that domination and control to fraudulently induce Plaintiff to select CMV for the Roof Project, dangling the promise of a 30-year warranty that did not exist."[FN13]
It bears noting that the particularity requirements set forth in CPLR § 3016 do not apply to corporate veil allegations in the context of this breach of contract action (see East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc., 66 AD3d at 134).
Although the defendants question why the plaintiff is seeking to hold Verrone personally liable under the circumstances of this case, where the disputed amount is being held in an IOLTA account during the pendency of this action, that inquiry is not relevant for purposes of deciding whether the defendants met their burden of demonstrating their entitlement to summary dismissal of the complaint insofar as asserted against Verrone. In addition, the question of whether the plaintiff is entitled to an award of attorney's fees under the terms of its contract with CMV is not an issue before the Court in connection with these motions.
Accordingly, that branch of the defendants' motion which was for summary judgment dismissing the complaint insofar as asserted against Verrone is denied, regardless of the sufficiency of the plaintiff's opposition papers (see Sterling Park Developers, LLC v China Perfect Construction Corp., 185 AD3d at 1085; Open Door Foods, LLC v Pasta Machines, Inc., 136 AD3d at 1005). In light of this determination, that branch of the defendants' motion which was pursuant to 22 NYCRR 130-1.1 for an award of costs and attorneys' fees is also denied. 
Turning to the plaintiff's cross motion, "[l]eave to amend a pleading shall be freely given [*5]absent prejudice or surprise resulting directly from the delay unless the proposed amendment is palpably insufficient or patently devoid of merit" (Ruland v Leibowitz, 209 AD3d 1051, 1052 [2d Dept 2022] [internal quotation marks omitted]; see CPLR § 3025[b]; Moon v Owadeyah, 223 AD3d 793, 794 [2d Dept 2024]). "Whether to grant leave to amend is within the trial court's discretion" (Ruland v Leibowitz, 209 AD3d at 1052). In the proposed amended complaint, which was attached as an exhibit to the cross motion, the plaintiff alleged, inter alia, that "[Verrone] used CMV Contacting to submit proposals to Plaintiff, CMV Company to enter into the AIA contract, and ISG to provide a fraudulent warranty," that "Verrone created an entity, ISG, pretended that entity was a credible manufacturer, and formatted a fraudulent warranty document from ISG, which he presented to Plaintiff on behalf of CMV, concealing his part as the sole owner of ISG," that "Verrone admitted in an email to his attorney dated March 15, 2022 that he was secretly acting as the manufacturer on the project, and intended to use his other entities to secure CMV's AIA contract with Plaintiff," that "Verrone used his excessive domination and control over CMV to cause CMV to (i) fraudulently induce Plaintiff to enter into the AIA contract under the false promise of a credible 30-year warranty, and (ii) deliver to Plaintiff a fraudulent warranty in breach of the AIA contract," and that Verrone intended on using the money deposited in the IOLTA account to pay the defendants' counsel's fees.[FN14]

Here, the allegations in the proposed amended complaint, which merely amplify and elaborate upon the allegations set forth in the original complaint, are neither palpably insufficient nor patently devoid of merit since they set forth facts sufficient to hold Verrone personally liable under a theory of piercing the corporate veil (see Giarguaro S.p.A. v Amko Intern. Trading, Inc. 300 AD2d 349, 350 [2d Dept 2002]). Furthermore, given that the defendants were already on notice that the plaintiff was seeking to pierce CMV's corporate veil, the defendants do not set forth any basis for a finding of prejudice or surprise resulting from the plaintiff's delay in moving to amend the complaint.
Moreover, given that Verrone was instructed by the defendants' counsel not to answer certain questions during his deposition that were relevant to veil piercing liability, the Court also grants that branch of the plaintiff's motion which was for an order directing Verrone to appear for and complete a deposition in the presence of the referee (see generally Giarguaro S.p.A. v Amko Intern. Trading, Inc. 300 AD2d at 350 [plaintiffs entitled to obtain necessary discovery to ascertain whether grounds exist to pierce corporate veil particularly where defendant failed to comply with written discovery demands and document production was deficient]). Contrary to the defendants' contention, the plaintiff did not waive its right to that additional discovery since the note of issue explicitly provides that "[d]iscovery proceedings now known to be necessary completed, except limited depositions to be overseen by a court appointed referee."[FN15]
(NYSCEF Doc No 78 at 2). The deposition of Verrone shall be conducted within thirty (30) days of the date of this decision and order.
The parties remaining contentions have been considered by the Court and are determined to be without merit.
Accordingly, it is hereby
ORDERED that the defendants' motion is denied; and it is further,
ORDERED that the plaintiff's cross motion is granted; and it is further,
ORDERED that the parties are directed to appear in person in courtroom 1201 on September 13, 2023, at 9:30 a.m.
The foregoing constitutes the Decision and Order of this Court.
Dated: August 1, 2024
White Plains, NY
E N T E R,
HON. ROBERT S. ONDROVIC, J.S.C.

Footnotes

Footnote 1:NYSCEF Doc No 27 at ¶¶ 24-25

Footnote 2:NYSCEF Doc No 66 

Footnote 3:NYSCEF Doc No 90 at ¶ 5

Footnote 4:NYSCEF Doc No 102 at ¶¶ 30 — 31

Footnote 5:NYSCEF Doc No 114 at ¶¶ 82 — 83, 96

Footnote 6:id. at ¶ 87

Footnote 7:id. at ¶¶ 91, 95

Footnote 8:NYSCEF Doc No 103 at p 5

Footnote 9:id. at p 2

Footnote 10:id. at p 17

Footnote 11:NYSCEF Doc No 12 at p 1

Footnote 12:NYSCEF Doc No 27 at ¶ 24

Footnote 13:id. at ¶¶ 21, 25, 27, 28

Footnote 14:NYSCEF Doc No 114 at ¶¶ 82, 87, 91, 96 — 98

Footnote 15:NYSCEF Doc No 78 at 2